UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ERIC JOSEY,

Plaintiff,

v. Case No. 3:26-cv-00199-WWB-LLL

COMMISSIONER OF INTERNAL REVENUE, in his official capacity; INTERNAL REVENUE SERVICE; UNITED STATES OF AMERICA,

Defendants.
_________________________________/

**MOTION TO DISMISS**

The Federal Defendants, the Commissioner of the Internal Revenue Service (IRS), in his official capacity, the IRS, and the United States of America, pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), move to dismiss Plaintiff's Complaint for 1) lack of subject matter jurisdiction—as precluded by the Anti-Injunction Act (AIA), an absence of an tax exception to Declaratory Judgment Act, and no reviewability under the Administrative Procedures Act (APA)—and 2) for failure to state a claim upon which relief can be granted. In support, the Federal Defendants provide as follows:

**MEMORANDUM OF LAW**

## I. BACKGROUND

### A. Automated Under-Reporter Program

The Automated Under-Reporter Program (AUR) is an IRS system designed to identify discrepancies between income (or deductions/credits) reported by taxpayers and information the IRS received from third parties (*e.g.*, employers, banks, and/or brokers).

*See generally*, IRM 4.19.3.1[1] Where a discrepancy is identified, the AUR program calculates a proposed deficiency and prepares a letter to the taxpayer requesting that the taxpayer explain the discrepancy. If the taxpayer responds, a tax examiner will consider the response and may adjust the proposed deficiency as appropriate. For social security benefits, the Internal Revenue Manual (IRM) instructs:

> "Do not pursue SS/RR amounts if the taxpayer provides a statement and/or documentation that the income is excludable because the payments are for disability due to injuries received from a terrorist attack or military action."

*See* IRM 4.19.3.8.17.1(12), 2007 WL 10139558, 12. Such payments are excluded from gross income under Section 104(a)(5) of the Internal Revenue Code. If the taxpayer does not respond, the program issues a notice of deficiency automatically.

The AUR program provides multiple ways that a taxpayer can respond to an AUR notice to provide a statement or documentation that the SSI payments are excludable. In addition to providing a written response, a taxpayer may call the number listed on the notice, and AUR may accept oral statements as a response. *See* IRM 4.19.3.23.2. The AUR program also has a chat function where taxpayers can chat with a representative and submit documentation. *See* IRM 4.19.3.23.3 & 4.19.3.23.3.1(2). Further, AUR has a secure messaging system that allows taxpayers to submit documentation via a secure email system. *See* IRM 4.19.3.23.4. If the taxpayer's response indicates that their Social Security benefits were the result of a terrorist attack, AUR has specific instructions on how to assist the taxpayer in resolving that discrepancy. *See* IRM 4.19.3.23.5.12(6) (cross-

[1] Internal Revenue Manual, Section 3. IMF Automated Under Reporter Program, available at https://www.irs.gov/irm/part4/irm_04-019-003r (last visited August 31, 2026).

referencing IRM 4.19.3.23.1.26, 2007 WL 10220261 (instructions classified as Official Use Only show up as "Redacted by Agency").

In general, if a taxpayer responds to the notice, AUR does not require everything to be verified, and the taxpayer's explanation of the items is generally taken at face value. *See* IRM 4.19.3.23(1)(a) & (b). If a taxpayer satisfactorily explains the discrepancy, AUR will close the case with no change to the tax liability. *See* IRM 4.19.3.23.6. If the taxpayer cannot resolve the matter with AUR, they may submit a protest with the Independent Office of Appeals (Appeals). *See* IRM 4.19.3.23.1.8. When a taxpayer files a protest, AUR will call the taxpayer to attempt to resolve any outstanding issues. *Id.* If there are unresolvable issues and there is sufficient time remaining on the statute of limitations for assessment, the case will be transferred to Appeals for consideration. If Appeals is still not able to resolve, a notice of deficiency would then issue.

In addition to the general procedures available as part of the AUR program to avoid issuance of a notice of deficiency, the IRS provides various guidance and procedures to taxpayers such as Publication 3920, *Tax Relief for Victims of Terrorist Acts.*[2] This publication advises how a taxpayer who receives nontaxable benefits can report on their return that these benefits are nontaxable despite receiving information reporting showing them as taxable. Specifically, if a taxpayer incorrectly receives a Form W-2 or Form 1099-R showing disability payments as taxable, the taxpayer can ask for a corrected form and file Form 1040X, attaching the corrected forms and mentioning Publication 3920 or section 104(a)(5) in Part III of that form. If a taxpayer cannot obtain a corrected form, the

[2] Publication 3920 (09/2014), Tax Relief for Victims of Terrorist Attacks, available at https://www.irs.gov/publications/p3920 (last visited August 31, 2026).

taxpayer should explain as much in Part III of Form 1040X and attach documentation supporting their claim. A taxpayer can also follow this process when filing Form 1040 or Form 1040NR, except that this information would be explained on a separate sheet of paper attached to the form.

The IRS tells the public on how to resolve the discrepancy between the taxpayer's reporting and Social Security's reporting, without a notice of deficiency being issued. Specifically, regarding income excludable under section 104, Publication 915 states that taxpayers should not include the nontaxable portion on their tax return and that, if they receive a notice from the IRS about that amount, they should follow the instructions in that notice to explain that the excluded payments aren't taxable.

**B. Factual and Procedural Background**

On May 12, 2025, the AUR program issued Plaintiff a Notice of Deficiency (Notice) for tax year 2022. The Notice asserted unreported Social Security income of $33,805, qualified dividends of $36.00 and capital gains income of $5.00, from Apex Cleaning.

On June 23, 2025, Plaintiff filed a Petition with the United States Tax Court (Docket No. 9399-25) challenging the proposed changes, asserting exclusion from gross income pursuant to Section 104(a)(5) such that the $33,805 received from the Social Security Administration (SSA) was non-taxable. Plaintiff further claimed that he had repeatedly received notices for prior tax years and asked the Tax Court to prevent the IRS from sending any more notices.

After reviewing the case facts and speaking with Plaintiff, the IRS attempted to concede the Tax Court case in full because Plaintiff qualifies for statutory exclusion under Section 104(a)(5) of the Internal Revenue Code (ICR). However, Plaintiff refused to sign

the proposed decision document, resulting in the IRS filing a Motion for Entry of Decision. The Court granted the Motion (Doc. 1-1), entering the proposed full-concession decision and concluding the case. In response, Plaintiff filed this action for declaratory judgment and injunctive relief. Accordingly, this lawsuit arises from Plaintiff's challenge to "ongoing, repeated, and unlawful administrative practice [by the IRS] of issuing [him] invalid Notices of Deficiency asserting taxability of Plaintiff's Social Security Disability Insurance "SSDI" benefits," in violation of the Administrative Procedures Act (APA). *See* Doc. 1 at ¶ 1.

## II. LEGAL STANDARD

### A. Dismissal Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of claims where the Court "lack[s] jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). A court may resolve a motion to dismiss brought pursuant to Rule 12(b)(1) in two ways: a facial challenge or a factual challenge. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021). "A facial attack challenges whether a plaintiff "has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* By contrast, a factual attack "challenges the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered." *Id.* To this end, the court "is free to weigh the facts and is not constrained to view them in the light most favorable to the plaintiff." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336 (11th Cir. 2013) (internal quotations and citations omitted). Federal courts are "courts of limited jurisdiction and possess only that power authorized by the Constitution and statute." *Lozman v. City of Riviera Beach, Fla.*, 119 F.4th 913, 917 (11th Cir. 2024) (internal quotations omitted).

### B. Dismissal Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a Complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While Rule does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. While the Court must treat all factual allegations as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (2009). "Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quotations omitted). "A district court may properly dismiss a complaint if it rests only on conclusory allegations, unwarranted deductions or facts or legal conclusions masquerading as facts." *Sarver v. Jackson*, 344 Fed. Appx. 526, 527 n.2 (11th Cir. 2009) (quotations omitted).

## III. ARGUMENT

### A. Lack of Subject Matter Jurisdiction Under 12(b)(1)

The APA prohibits judicial review of agency actions in two circumstances: (i) when "statutes preclude judicial review," 5 U.S.C. § 701(a)(1); and (ii) when "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2). Plaintiff's claim fails under both circumstances.

*i. Anti-Injunction Act and Tax Exception to Declaratory Judgment Act*

The Anti-Injunction Act (AIA) and tax exception to the Declaratory Judgment Act (DJA) precludes Plaintiff's request for injunctive and declaratory relief. *See* I.R.C. § 7421(a); 28 U.S.C. § 2201(a). The AIA provides, with few statutory exceptions,[3] that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." *Id.* The AIA ensures "taxes can ordinarily be challenged only after they are paid, by suing for a refund." *NFIB v. Sebelius*, 567 U.S. 519, 543 (2012). The statute thus "protects the Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes." *Id.* Additionally, the DJA specifically precludes district courts from granting declaratory relief with respect to federal taxes. 28 U.S.C. § 2201.[4] To determine a suit's purpose, courts must first "inquire… into the actions objective aim—essentially, the relief the suit requests." *CIC Servs., LLC v. IRS*, 593 U.S. 209, 2017 (2021). If "the target of a requested injunction is a tax obligation," then the AIA bars the suit. *Id.* at 218.

Here, Plaintiff is requesting injunctive and declaratory relief to preclude the IRS from issuing future notices of deficiency that treat his SSDI payments as taxable income. *See* Doc. 1 at 13. Currently, there is no field on the IRS Form 1040 to indicate that such

---

[3] The AIA's exceptions are under sections 6015(e), 6212(a) and (c), 6213(a), 6232(c), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436. No statutory exceptions apply.

[4] The Eleventh Circuit has held that the DJA is "at least as broad" as the AIA. *See Hancock Cnty. Land Acquisitions, LLC v. United States*, 553 F. Supp. 3d 1284 (N.D. Ga. 2021) ("As the Declaratory Judgment Act's prohibition on entering declaratory judgment regarding federal taxes is at least as broad as the Anti-Injunction Act, it also does not confer jurisdiction."), *aff'd by unpub. op.*, No. 21-12508, 2022 WL 3449525 (11th Cir. Aug. 17, 2022). Thus, the DJA would also bar this suit and a separate analysis is not required.

SSDI payments are excludable under I.R.C. § 104(a)(5). Similarly, there is nothing on the Form SSA-1099 to designate non-taxable benefits. These SSDI payments are no longer excludable from income once the beneficiary receives full retirement age. *See* IRS Publication 3920. As a result, the AUR program systemically identifies mismatches in reported income.

Plaintiff's requested relief would restrain the IRS from assessing any future tax liability predicated on the inclusion of his SSDI benefits as taxable income. Payments of these SSDI benefits would be properly included in income once Plaintiff reaches retirement age, so granting such relief would prevent the IRS from taking steps to assess tax properly attributable to the now-taxable income. If Plaintiff did not properly reported income on his return, the IRS would be unable to initiate deficiency procedures to assess any underpayment of this tax. The requested declaratory relief is clearly "with respect to federal taxes." The requested relief violates the AIA and DJA as precluding issuing notices of deficiency directly restricts the assessment or collection of taxes.

There are two judicially created exceptions to the AIA. An injunction may be available if the taxpayer demonstrates: (1) under no circumstances could the government establish its claim to the asserted tax; and (2) equity jurisdiction otherwise exists because there is no adequate remedy at law and irreparable injury will result. *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7 (1962); *see Enax v. U.S.*, 243 Fed.Appx. 449, 451 (11th Cir. 2008) (restating the *Williams Packing* exception); *see Christian Coalition of Florida, Inc. v. U.S.*, 662 F.3d 1182, 1194 (11th Cir. 2011) ("The Supreme Court has made clear, however, that a taxpayer must establish *both* prongs of the judicial exception to the [AIA] before a court may entertain his claim for injunctive relief against the IRS.") (internal

citations omitted). Here, Plaintiff may be able to demonstrate the IRS cannot establish its claim to the asserted tax, as the proposed deficiencies are excluded from income under section 104(a)(5). However, he is unlikely to be able to show that equity jurisdiction otherwise exists. Plaintiff is not suffering irreparable harm, as he has both administrative and judicial review options available to him prior to the assessment or collection of the tax. *Rocky Branch Timberlands LLC v. U.S.*, No. 22-12646, 2023 WL 5746600 (11th Cir. Sept. 6, 2023) (citing *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994) (noting a plaintiff suffers irreparable injury for injunctive purposes when there is no adequate remedy at law.)

As discussed above, Plaintiff may include a statement about his entitlement to the exclusion when filing his return. He may also respond administratively to a notice from the AUR prior to receiving an actual notice of deficiency. In the event he does not respond to the AUR, he may petition the Tax Court following the receipt of a notice of deficiency. Plaintiff alleges he has received multiple notices, but the IRS has either agreed with him and issued no change letters or other notices indicating such after Plaintiff has disputed them,[5] and has only gone to Tax Court once for such proposed liabilities.[6] These

[5] For Tax Year (TY) 2018 and 2022, the IRS issued no change letters; for TY 2020, the IRS fully agreed and did not issue a closing letter; for TY 2021, the IRS closed his case with a CP2005. IRM 21.3.1.6.40(4) ("AUR sends the CP 2005 to taxpayers to thank them for information and to inform them that AUR is closing the case with no change to the tax liability and/or refundable credits.")

[6] The Tax Court granted the Government's motion for an entry of decision with a stipulated decision that showed no deficiency and no penalties due from Plaintiff. *Josey v. Commissioner*, 9399-25, Order and Decision, Jan. 26, 2026, Dkt. No. 15. *See* also, Doc. 1-1 (Plaintiff's Exhibit).

resolutions demonstrate that Plaintiff has an adequate remedy at law. Thus, Plaintiff cannot meet the second prong of *Williams Packing* exception and it does not apply.

The second judicial exception states that an injunction may be available if Plaintiff can show no alternative remedy exists. *South Carolina v. Regan*, 465 U.S. 367, 381 (1984) (the AIA prohibits injunctions in the context of a statutory scheme which provides an alternative remedy) ("*Regan* exception"). As explained above, Plaintiff has both administrative and judicial remedies to correct the proposed assessment of tax for any SSDI payments. While Plaintiff is unhappy that the circumstances may reoccur (*see* Doc. 1 at ¶¶ 16-17), he nonetheless has options to address the proposed deficiency. As such, the second judicial exception would also not apply because Plaintiff fails the *Regan* exception. Accordingly, the AIA and DJA preclude the court from entering Plaintiff's requested relief, and the case should be dismissed for lack of jurisdiction.

*ii. Administrative Procedures Act*

Plaintiff's action is unreviewable under the APA. First, how the IRS determines a deficiency is unreviewable under the APA. Second, there is no final agency action here for which there is an adequate remedy under the APA.

Judicial review of agency action is not available under the APA where the agency action "is committed to agency discretion by law." *See* 5 U.S.C. § 701(a)(2). Section 7803(a)(2)(A) gives the Commissioner the power to "administer, manage, conduct, direct, and supervise the execution and application of the internal revenue laws or related statutes and tax conventions to which the United States is a party." Here, there is an absence of meaningful standards of review because there is no requirement that the IRS engage in any particular kind of inquiry before selecting a return for examination or

determining a deficiency. In general, the IRS is not required to use any specific standard when deciding whether to examine a return and the IRS's determination with respect to a return is subject to *de novo* review. *See*, *e.g.*, *Scar v. Comm'r*, 814 F.2d 1363, 1368 (9th Cir. 1987). Further, when reviewing a refund or deficiency claim, courts do not "look behind a deficiency notice to examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his determinations. *Greenberg's Express*, Inc. v. Comm'r, 62 T.C. 324, 327-28 (1974). That the IRS's method is not relevant to the action and no remedy is available based on the method suggests that courts will not require the IRS to use any specific method to determine a deficiency.

The examination of returns with Section 104(a)(5) exemptions is the type of decision making committed to agency discretion and that has been respected by courts as balancing agency resources and policy priorities. *See*, *e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985). The number of affected taxpayers such as Plaintiff is small, and the exemption claimed remains fact dependent as the exemption no longer applies once beneficiaries reach retirement age (and their Social Security benefits are attributable to something besides the terrorist attack). Accordingly, what steps the IRS should take to prevent the IRS from incorrectly asserting tax on this income—such as publishing the guidance and implementing the AUR procedures discussed above—is a question of agency resources and priorities that is within the IRS's discretion.

Moreover, Plaintiff has not alleged a final agency action for which there is no adequate remedy. The APA permits review of a "final agency action for which there is no other adequate remedy in a court . . ." 5 U.S.C. § 704. Plaintiff's Complaint makes two attempts at defining the review of the final agency action. Each fails at a different prong

of the analysis. First, Plaintiff defines the issuance of multiple notices of deficiency as a "pattern" constituting a single agency action. *See* Doc. 1 at ¶¶ 17, 22. The Federal Defendants are not aware of any cases that support the proposition that a "pattern" of discrete actions (which themselves would be final agency actions) itself can constitute a final agency action reviewable under the APA. *Cf. Daines v. Internal Revenue Service*, 136 A.F.T.R.2d 2025-5948, 2025 WL 2694788 (E.D. Wis. Sept. 22, 2025) (noting that the plaintiff in that case also had not shown that any Court had recognized "a similarly vague collection of agency actions as a rule under the APA"). But this definition also fails under the definition of "final." An agency action must mark the "consummation" of the agency's decision-making process and not just be of a tentative or interlocutory nature. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Further, it must be an action by which "rights or obligations have been determined" or from which "legal consequences will flow." *Id.* at 178. In this case, there cannot have been a decision to issue notices of deficiency to Plaintiff for tax returns that he has not yet filed. Indeed, as described, Plaintiff has options to prevent notices of deficiency from being issued in the future. Even if Plaintiff pointed to some rule or policy resulting in the issuance of notices of deficiency for this type of income, that rule or policy would still not, itself, be the final agency action.

Plaintiff attempts to define the final agency action as the issuance of the notice of deficiency. However, there is an adequate remedy for an erroneous notice of deficiency. Review of an agency action is only available pursuant to 5 U.S.C. § 704 where there is not an adequate remedy in a court of law. A remedy need not be identical to that available under the APA; it only needs to be "of the same genre" to the party seeking redress. *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009). And relief is adequate "where a

statute affords an opportunity for *de novo* district-court review of the agency action." *Id.* at 522-23. Where Congress has enacted a special statutory review process for administrative action, that process applies to the exclusion of the APA. *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). Contrary to Plaintiff's allegations, Courts already recognize the ability to challenge a notice of deficiency *de novo* in Tax Court as an adequate remedy for the issuance of that notice of deficiency. *See*, *e.g.*, *Mathes v. United States*, 901 F.2d 1031 (11th Cir. 1990). Once a notice of deficiency is challenged in Tax Court, any erroneous deficiency asserted in that notice can be resolved by a decision of that court. Alternatively, a taxpayer can pay the deficiency asserted in the notice of deficiency and then challenge that determination in district court or the court of Federal Claims through a refund suit. *See* I.R.C. § 7422.

Accordingly, Plaintiff's claims are unreviewable under the APA, so the complaint should be dismissed for lack of subject matter jurisdiction.

*iii. The IRS Is Not a Proper Party*

Plaintiff's action against the IRS—and its commissioner—is improper because an executive department of the United States can only be sued with the express authority of Congress and Congress has not consented to suit against the IRS. *Castleberry v. ATF*, 530 F.2d 672, 673 n.3 ("Congress has not constituted the Treasury Department or any of its divisions or bureaus as a body corporate and has not authorized them to be sued *eo nomine*") (5th Cir. 1976). Here, the United States is the only real party in interest, so the Court should dismiss the IRS as a named defendant. *See Hawaii v. Gordon*, 373 U.S. 57, 58 (1963); *Dugan v. Rank*, 372 U.S. 609, 620 (1963); *Louisiana v. McAdoo*, 234 U.S. 627, 632 (1914). This Court should dismiss the action against the IRS and Commissioner.

### B. Failure to State a Claim Under 12(b)(6)

Even if this Court were to find subject matter jurisdiction to proceed under the APA, Plaintiff's claims should also be dismissed for failure to state a claim for which relief can be granted because the issuance of notices of deficiencies is not arbitrary or capricious and because the APA does not provide for the remedy that he seeks.

*i. Plaintiff's Claims Fail on the Merits*

Under the APA, a reviewing court may "hold unlawful and set aside agency actions, findings, and conclusions found to be . . . arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This is a 'deferential standard' that 'presume[s] the validity of agency action.'" *WorldCom, Inc. v. FCC*, 238 F.3d 449, 457 (D.C. Cir. 2001) (alteration in original) (quoting *Sw. Bell Tel. Co. v. FCC*, 168 F.3d 1344, 1352 (D.C. Cir. 1999)). An agency decision is arbitrary and capricious if the agency relied on factors Congress had not intended it to consider, entirely failed to consider an important aspect of the problem offered an explanation for its decision that runs counter to the evidence before it, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Here, the Social Security Administration issued Plaintiff Forms SSA-1099 reporting that it had paid him benefits. These Forms SSA-1099 do not indicate whether those payments were ordinary (taxable) benefits, or are benefits subject to an exclusion, section 104(a)(5).[7] Accordingly, the IRS received information reporting that Plaintiff received

---

[7] Form SSA-1099 is published by the Social Security Administration and is not an IRS product.

payments without any indication that they are nontaxable. Plaintiff's complaint contains no allegation that he made any statement on his return that he qualified for an exclusion, as instructed in Pub. 3920. Nor does he allege that he responded to AUR to resolve the discrepancy, as instructed by the CP2000s. Because AUR received information about payments to Plaintiff that he did not include on his return, and Plaintiff appears to have failed to avail himself of the avenues available to resolve that discrepancy, it was not arbitrary and capricious for the IRS to issue the notice of deficiency.

Plaintiff's arguments seem to hinge on the fact that he has previously received concessions after he established (in prior years) that these were benefits subject to the exclusion under Section 104. *See* Doc. 1 at ¶ 14. However, it is well-established that each tax year stands on its own. *See Batchelor-Robjohns v. United States*, 788 F.3d 1280, 1288 (11th Cir. 2015) (describing the narrowness of *res judicata* in tax cases). There are reasons that an individual's eligibility for this particular exclusion could change between years. For example, because the exclusion only applies to disability income "attributable to" the injuries incurred, it does not apply to any disability payments a taxpayer would have otherwise received. Publication 3920 illustrates that situation: a firefighter who becomes eligible for a full retirement benefit could only exclude the disability income received before he reached retirement age. As such, even if the IRS determines for one year that the taxpayer is eligible for the exclusion under section 104, that determination does not necessarily hold true for the next year, and it is not arbitrary and capricious to need to make that determination anew for other tax years. Rather, that is basic tax law. *See Batchelor-Robjohns*, 788 F.3d at 1288.

The issuance of a notice of deficiency where a taxpayer has not established that the payment he received is subject to an exclusion is not *ultra vires*. Plaintiff alleges that the issuance of the notice of deficiency violates Section 104. *See* Doc. 1 at ¶ 24. However, Section 104 does not prohibit the issuance of a notice of deficiency; it merely provides for the exclusion of items from gross income. It provides no guidance on the process for determining whether a taxpayer is entitled to that exclusion. In contrast, the IRS has broad investigatory and enforcement powers. Specifically, the IRS may make inquiries necessary to determine the correctness of a tax return. *See* I.R.C. § 7602(a). Where the IRS receives information that a taxpayer has received potential taxable income that is not reported on the return, it acts squarely within that grant of authority in investigating whether the taxpayer has underreported that income.

*ii. Lack of Relief Under the APA*

Plaintiff has not alleged any action that can be "set aside." Although he does not invoke the section by name, Plaintiff invokes the arbitrary-and-capricious and the ultra-vires standards in 5 U.S.C. § 706(2)(A) and (C). Those standards of review are used when a court is deciding whether to "set aside agency action, findings, and conclusions" that fall within those standards of review.

Further, Plaintiff has not identified an agency action that can be "set aside." The individual notices of deficiency are already not reviewable because they are subject to review in Tax Court, and Plaintiff affirmatively alleges that the ones that have been issued to him have already been resolved. Although he argues that there is a "pattern" of sending notices, Plaintiff does not allege the existence of any affirmative policy or decision that can be set aside. Accordingly, section 706(2) does not provide a remedy.

Moreover, Plaintiff has not alleged that he is entitled to relief under Section 706(1). This section allows a court to "compel agency action unlawfully withheld or unreasonably delayed." Plaintiff makes no allegations that he is entitled to relief under this provision. Nor can he, as there are no requirements that the IRS use any particular standard in determining whether to examine a return or in determining that a deficiency exists.

*iii. An Injunction is Inappropriate*

In the Eleventh Circuit, Injunctive relief is appropriate when: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). In this Circuit, "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites. *Id.* As explained, *supra* Section III(A) & (B), Plaintiff's claims do not have a substantial likelihood of success on the merits. Thus, we proceed directly to the next prong of irreparable injury.

Plaintiff has not alleged a particular injury. Instead, he states without elaboration that the issuance of a notice of deficiency is an injury. But it is not clear how he is injured by the issuance of a notice of deficiency. The notice of deficiency merely states that the IRS has determined that a deficiency exists, and it provides taxpayers with the opportunity to contest that determination in Tax Court. The IRS may not assess that deficiency or begin processes to levy or collect the tax until either the expiration of the time to petition the Tax Court or, if a petition has been filed, the decision of the Tax Court has become

final. *See* I.R.C. § 6213(a). Moreover, Plaintiff has also not alleged the issuance of the notice of deficiency is irreparable. As described above, Plaintiff can seek review of the notice of deficiency in Tax Court. *See also*, Doc. 1-1. At best, Plaintiff complains that he suffers the "repeated burden of litigating identical issues in successful tax years." Doc. 1 at ¶ 45. But to the extent that he incurs litigation costs, he can seek those costs under Section 7430, to the extent the government's position is not substantially justified.

Even if the issuance of the notice of deficiency constitutes an irreparable injury, Plaintiff has also not established that he will suffer such injury absent the injunction. As discussed above, Plaintiff can avoid receiving future notices of deficiency by calling the number on the CP2000 and explaining that the income is for benefits for a disability due to a terrorist attack. Thus, Plaintiff can avoid these notices without needing the injunction or even litigation and, thus, the threatened injury to Plaintiff does not outweigh the damage that a proposed injunction would have on the Government.

Furthermore, Plaintiff has also not shown that the balance of hardships or public interest favors such an injunction. Indeed, every taxpayer is already required to keep records to establish the amount of gross income required to be shown on their return. *See* I.R.C. § 6001; Treas. Reg. § 1.6001-1(a). And taxpayers may be required to substantiate the correctness of their return in an examination. *See* I.R.C. § 7602. Exclusions from income are a matter of "legislative grace", and the taxpayer as a matter of law bears the burden of showing that their income falls within the claimed exclusion. *Stinson Est. v. United States*, 214 F.3d 846, 848 (7th Cir. 2000). Plaintiff sought injunction here, appearing to seek to flip this principle on its head to require that the IRS, before acting, establish that payments that he receives are not subject to an exclusion.

*iv. No Due Process Violation*

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. There are two types of due process claims. Substantive due process prohibits the government from infringing on certain "fundamental" liberty interests, regardless of process provided, unless it is narrowly tailored to serve a compelling state interest. *Reno v. Flores*, 507 U.S. 292, 301-02 (1993). Procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause." *Mathews v. Elridge*, 424 U.S. 319, 322 (1976).

Plaintiff's Complaint largely speaks in terms of procedural due process. *See* Doc. 1 at 9-10. To state a procedural due process claim, a plaintiff must prove "two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Generally, "some form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); accord *Perrier-Bilbo v. United States*, 954 F.3d 413, 433 (1st Cir. 2020). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. In determining whether an administrative system affords a meaningful opportunity to be heard, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334.

To assess a procedural due process claim, courts balance three factors: (1) the nature of the private interest that will be affected, (2) the risk of an erroneous deprivation

of the interest through the process provided and the probable value (if any) of additional or substitute procedural safeguards, and (3) the Government's interest, including the function involved and the fiscal and administrative burdens of providing additional or substitute process. *Mathews*, 424 U.S. at 335. Under this test, due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Plaintiff alleges that, although Tax Court review is available to review the issuance of a notice of deficiency, "repetitive post-deprivation litigation" is not sufficient under the Fifth Amendment, and governmental procedures must be reasonably calculated to avoid erroneous deprivations. *See* Doc. 1 at ¶ 34. As an initial matter, Tax Court review is not "post-deprivation" litigation because it is a pre-assessment venue. Indeed, Plaintiff has not stated what "deprivation" of a property interest has occurred. *See generally*, Doc. 1. Plaintiff omits from his Complaint the administrative procedures discussed above. As described, Plaintiff can include a statement with his return claiming his eligibility for the exemption. And if he nevertheless receives a CP2000 from the IRS, he can simply call the phone number on the notice of deficiency and tell the AUR that the income is for benefits for a disability due to a terrorist attack. It is difficult to see how any additional process would confer enough value to offset the fiscal and administrative burdens of providing any such process (which Plaintiff does not describe in his complaint).

## IV. CONCLUSION

For reasons discussed above, and pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim for

which relief can be granted, the Federal Defendants hereby respectfully ask this Court to dismiss Plaintiff's Complaint. Doc. 1.

Dated: August 31, 2026

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

*/s/ Mai Tran*
MAI TRAN
Assistant United States Attorney
Florida Bar No. 100982
300 North Hogan Street, Suite 700
Jacksonville, FL 32202-4270
Telephone No. (904) 301-6358/6300
Facsimile No. (904) 301-6240
Email: Mai.Tran2@usdoj.gov
*Attorneys for Defendant*

**LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), the undersigned has conferred with *pro se* Plaintiff, Eric Josey, regarding the instant motion and Plaintiff advised that he opposes the relief requested in this motion.

**A.I. CERTIFICATION**

The undersigned hereby certifies that no generative AI was used in the drafting and preparation of the foregoing filing.

*/s/ Mai Tran*
MAI TRAN
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 31, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to CM/ECF participants, including pro se Plaintiff, who receives automated ECF notices:

Eric Josey
250 Palm Coast Pkwy NE
Ste. 607, PMB 173
Palm Coast, Florida 32137
Email: premier.consulting173@aol.com
*Pro Se Litigant*

*/s/ Mai Tran*
MAI TRAN
Assistant United States Attorney